# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

EUFEMIA TRUJILLO

    Plaintiff,

v.                                                      No. CV-06-461 MV/KBM

UNITED STATES DEPARTMENT of
JUSTICE, CIVIL DIVISION, RADIATION
EXPOSURE COMPENSATION PROGRAM,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff's Petition to Review Final Reviewable Order of Administrative Decision (Doc. No. 1, filed June 2, 2006) and Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment (Doc. No. 9, filed August 4, 2006) ("Motion"). This action is brought as an appeal from a final determination of the United States Department of Justice denying Plaintiff's claim for compensation under the Radiation Exposure Compensation Act, 42 U.S.C. § 2210, note (1994). The Court, having considered the parties' submissions, the administrative record, and the relevant legal authority, will, for the reasons stated below, **AFFIRM** the Department of Justice' decision to deny Plaintiff's claim. This case is **DISMISSED with prejudice**.

**Procedural Background**

On March 17, 2003, Plaintiff filed a claim under the Radiation Exposure Compensation Act ("RECA"). *See* Administrative Record ("A.R.") at 0103-0142. The claim sought compensation for several diseases contracted by Plaintiff's late husband who was employed as a uranium mill worker

and a transporter of uranium ore beginning in the 1950s and continuing through 1971. A.R. at 0103-0104, 0112-0113. Plaintiff's husband died on September 27, 1996. A.R. at 0106.

After reviewing the claim, the United States Department of Justice ("DOJ") sent a letter, dated September 15, 2003, to Plaintiff indicating that her claim was deficient because it did not include sufficient medical records to satisfy the eligibility criteria required by law. A.R. at 0090-0091. The DOJ identified the medical records necessary to establish that Plaintiff's husband had been diagnosed with a compensable disease and gave Plaintiff sixty days to correct the deficiency. *Id*. Plaintiff requested, and DOJ granted, eight 60-day extensions of time giving Plaintiff until September 10, 2005 to submit the documentation outlined in the deficiency letter. A.R. at 85, 83, 82, 80, 79, 77, 76, 74, 73, 71, 70, 68, 64, 62, 51, 49. On September 28, 2005, Plaintiff submitted additional documentation and requested DOJ to either confirm sufficient documentation for medical eligibility or to grant an additional extension of time to submit additional documentation. A.R. at 0035-0036. DOJ sent Plaintiff a letter, dated November 8, 2005, informing her that her claim was denied. A.R. at 0030. DOJ denied Plaintiff's claim "because the evidence fails to establish that the decedent contracted a compensable disease." A.R. at 00321-0032. Plaintiff appealed the denial on January 4, 2006. A.R. at 0022-0028. On April 4, 2006, the DOJ Appeals Officer concluded that the medical evidence failed to satisfy RECA's medical criteria and affirmed the decision to deny Plaintiff's claim. A.R. at 0001-0014.

Plaintiff then sought judicial review of the DOJ Appeals Officer's decision. (*See* Doc. No. 1, filed June 2, 2006). Defendant filed its Motion to Dismiss or, in the Alternative, for Summary Judgment now before the Court. (*See* Doc. No. 9, filed August 4, 2006).

**Standard of Review**

Both parties recite the standards of review for motions to dismiss and motions for summary judgment. (Motion at 9-10; Response at 10-12, Doc. No. 10, filed August 21, 2006 ("Response"). However, "[r]eviews of agency action in the district courts must be processed *as appeals.*" *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1574 (10th Cir. 1994) (*emphasis in original*). The Tenth Circuit "explicitly prohibit[s]" the use of motions for summary judgment in administrative appeals. *Id.* at 1580 ("motions for summary judgment are conceptually incompatible with the very nature and purpose of an appeal").

The Court notes that counsel in this case were also counsel in another RECA case before the Court. (*See Sandoval v. United States*, No. CV-06-278 JC/RLP). In *Sandoval*, the Court entered an opinion citing *Olenhouse* in which the Tenth Circuit prohibits the use of summary judgment motions in administrative appeals. (*Id.* 4 (Conway, J.)). The *Sandoval* Court stated that the motion for summary judgment "must function primarily as an appellate brief on the merits insofar as it relates to the final agency determination." (*Id.*). The Court entered its opinion in *Sandoval* on September 7, 2006. Counsel in the case currently before the Court were, therefore, on notice that a motion for summary judgment is not appropriate but did not withdraw the motion. Nor did counsel submit appellate briefs. As it did in *Sandoval*, the Court will construe the motion for summary judgment and the response and reply as appellate briefs.

RECA sets forth the standard for judicial review when an individual whose claim for compensation is denied: "The court shall review the denial on the administrative record and shall hold unlawful and set aside the denial if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *See* Pub. L. 102-486, 106 Stat. 3131.

3

"The duty of a court reviewing agency action under the 'arbitrary or capricious' standard is to ascertain whether the agency examined the relevant data and articulated a rational connection between the facts found and the decision made." *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1574 (10th Cir. 1994). In determining whether an agency acted in an arbitrary and capricious manner, the Court must ensure that the agency decision was based on a consideration of the relevant factors and examine whether there has been a clear error of judgment. *See Friends of the Bow v. Thompson*, 124 F.3d 1210, 1215 (10th Cir. 1997). "Generally, an agency decision will be considered arbitrary and capricious if the agency had relied on factors which Congress had not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id.*

**Radiation Exposure Compensation Act**

RECA's purpose is to establish a procedure to make partial restitution to certain individuals that had been injured by radiation exposure. *See* Pub. L. 101-426, 104 Stat. 920, § 2. Congress enacted the Radiation Exposure Compensation Act ("RECA") in 1990 after finding that fallout from above-ground nuclear tests and radiation released in underground uranium mines increased the risk of injury and disease to exposed individuals downwind of the nuclear tests and underground uranium miners. *Id.* Because the lives and health of the "downwinders" and uranium miners were subjected to increased risk of injury and disease to serve the national security interests of the United States, Congress determined that the United States should assume responsibility for the harm done to these individuals. *Id.* Congress later amended RECA to make above-ground uranium miners, millers and individuals who transported uranium ore eligible for compensation for diseases and deaths associated

with radiation exposure due to the federal government's failure to warn and otherwise help protect citizens from those health hazards. Pub. L. 106-245, 114 Stat. 501, § 2. A surviving spouse may make a claim and receive payment if an eligible person dies before making a claim and/or receiving payment. Pub. L. 101-426, 104 Stat. 920, § 6(c)(4).

Section 5(a) of RECA provides that a person is eligible for compensation if that individual: (1) worked as a uranium miller or ore transporter for at least one year during the period beginning January 1, 1942, and ending on December 31, 1971; and (2) submits written medical documentation that the individual, after that exposure, developed lung cancer or a nonmalignant respiratory disease or renal cancers and other chronic renal disease including nephritis and kidney tubal tissue injury. 42 U.S.C. § 2210 note.

Section 6(a) of RECA instructs the Attorney General to establish procedures whereby individuals may submit claims for payments under RECA. *See* 42 U.S.C. 2210 note. Section 6(b)(2)(A) directs the Attorney General to, "in consultation with the Surgeon General, establish guidelines for determining what constitutes written medical documentation that an individual contracted" a disease compensable under RECA. *Id.* Section 6(b)(1) requires the Attorney General to "determine whether each claim filed under [RECA] meets the requirements of [RECA]. All reasonable doubt with regard to whether a claim meets the requirements of [RECA] shall be resolved in favor of the claimant." *Id.*

**RECA Regulations**

The procedures established in the RECA regulations "are designed to utilize existing records so that claims can be resolved in a reliable, objective, and non-adversarial manner, quickly and with little administrative cost to the United States or to the person filing the claim." 28 C.F.R. § 79.1.

The regulations specify the proof required for determining whether an individual contracted nonmalignant respiratory disease following employment as a miller or ore transporter. *See* 28 C.F.R. §§ 79.55, 79.65. The claimant or eligible surviving beneficiary "bear[s] the burden of providing evidence of each element necessary to establish eligibility under any compensable claim category . . . ." 28 C.F.R. § 79.4(a). "A conclusion that a claimant developed a nonmalignant respiratory disease *must* be supported by medical documentation." 28 C.F.R. §§ 79.55(a), 79.65(a) (*emphasis added*).

**Denial of Plaintiff's Claim**

Plaintiff claimed the following diseases: lung cancer; pulmonary fibrosis; fibrosis of the lung; renal cancer; silicosis; cor pulmonale related to fibrosis of the lung; pneumoconiosis; and chronic renal failure. *See* A.R. at 31. DOJ denied Plaintiff's claim stating:

> The decedent's death certificate indicates that he suffered from cardiac arrhythmia, sudden death, and dilated cardiomyopathy, none of which are compensable under the Act. Extensive medical records provided in support of the claim cover the period from 1965 through 1996. There are several records indicating a "clear chest" . . . There is no evidence of renal disease . . .
>
> Several radiology reports of chest x-rays were included which note the following findings: . . . "mild interstitial changes" . . . "related to congestive failure" . . . "could represent pneumonia or mild interstitial edema" . . "nearly complete clearing of . . . infiltrate and the small bilateral pleural effusions. Some interstitial changes persist . . . but these are quite minimal." These findings do not provide sufficient evidence that the decedent was diagnosed with lung cancer or a nonmalignant respiratory disease. Finally, the pulmonary function test dated September 29, 1996, is deficient because it fails to satisfy American Thoracic Society standards, specifically, the test must contain three volume time tracings reflecting a time span of six seconds or longer.

A.R. at 32. DOJ's Assistant Director denied the claim because the evidence failed to establish that the decedent contracted a compensable disease. *See* A.R. at 32.

Plaintiff appealed the denial on the grounds that: (1) the medical records were generated as

a part of the efforts to treat decedent's diseases rather than for the purpose of establishing claimant's eligibility for federal benefits, (2) "medical personnel may have deferred efforts to associate the decedent's lung ailments to industrial diseases" such as the compensable diseases because "the medical records appear to be completely void of reference to the decedent's extensive industrial experience as a uranium mill worker and ore transporter," (3) the medical records demonstrate that the decedent suffered from many serious medical conditions which claimant believes to have been caused or precipitated in significant part by her husband's extensive employment history in the uranium industry, (4) decedent's employment records demonstrate that decedent has an extensive history of working in the uranium industry, and (5) decedent's x-ray films were destroyed before claimant had an opportunity to secure possession of the films for submission to a NIOSH certified "B" reader. A.R. at 19-20.

In her appeal, Plaintiff stated that the RECA regulations allow claimants to submit x-ray films and "interpretive reports of the film by a maximum of two NIOSH certified 'B' readers classifying the existence of a disease . . ." A.R. at 18. Plaintiff admitted that she was not able to locate any x-ray films. *See* A.R. at 18. Plaintiff also admitted that while the medical records contained several radiology reports commenting on the condition of decedent's lungs, "It does not appear that any of the films were ever submitted to a NIOSH certified 'B' reader." A.R. at 18. Plaintiff further admitted that "none of the x-ray reports made specific reference, by name, to one of the nonmalignant respiratory diseases in the Act." *Id.* More generally, Plaintiff admitted that "the records submitted in support of this claim do not include reference to a specific diagnosis of a designated compensable disease." *Id.* Finally, Plaintiff "acknowledged that in reaching his decision the Assistant Director appears to have given careful consideration to the medical evidence submitted in support of

7

[Plaintiff's] claim." A.R. at 19.

The Appeals Officer affirmed the Assistant Director's denial of Plaintiff's claim. *See* A.R. at 1-14. The Appeals Officer concluded that the radiology reports interpreting the x-rays of decedent's chest do not support the finding that he developed a nonmalignant respiratory diseased covered under RECA because the findings of "mild interstitial changes" is a non-specific finding that could be attributable to any number of lung conditions, and because the discharge summary presented preponderant evidence that the interstitial changes were caused by atypical pulmonary edema related to decedent's heart condition. A.R. at 11-12. The Appeals Officer also concluded that the pulmonary function test results did not meet the prerequisites set forth in RECA's implementing regulations at 28 C.F.R. § 79.65(d)(3)(ii)(D). A.R. at 12-13.

DOJ relied on the requirements in the RECA regulations, considered all the medical evidence and arguments presented by Plaintiff, and offered an explanation for its decision that is consistent with the evidence Plaintiff submitted. The Court therefore concludes that DOJ's denial of Plaintiff's claim was not arbitrary or capricious.

**Due Process**

Plaintiff asserts that DOJ's denial of her claim violates her right to due process of law. (Resp. at 22-24). Plaintiff argues that because the period of employment eligibility under RECA spans a term of years that began and ended many years before RECA became law, her ability to locate medical documentation has been substantially impaired by the passage of time or other causes beyond the claimants' control. (Resp. at 23). Plaintiff concludes that DOJ's regulations requiring medical documentation is an unreasonable procedure that causes an erroneous deprivation of benefits to an otherwise eligible claimant. (*Id.*). Additionally, Plaintiff states that the regulations' lack of

8

procedural standards to govern circumstances when DOJ should be required to obtain medical expertise through the office of the Surgeon General also causes the erroneous deprivation of benefits to an otherwise eligible claimant. (*Id.*).

Plaintiff seeks to impose new requirements on DOJ in determining whether she is eligible for compensation under RECA. "To impose upon the agency more stringent procedural requirements, absent extraordinary circumstances, would clearly violate the Supreme Court's holding in *Vermont Yankee* that the formulation of procedure is to be basically left within the discretion of the agencies to which Congress has confined the responsibility for substantive judgments." *Phillips Petroleum Co. v. United States Environmental Protection Agency*, 803 F.2d 545, 559 (10th Cir. 1986) (*citing Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council*, 435 U.S. 519 (1978) ("Absent constitutional constraints or extremely compelling circumstances the administrative agencies should be free to fashion their own rules of procedure and to pursue methods of inquiry capable of permitting them to discharge their multitudinous duties.")).

The DOJ Appeals Officer concluded that the Assistant Director properly construed the evidentiary standard as it applies to deceased miners. A.R. at 9-121. The Appeals Officer stated: "in promulgating the regulations implementing RECA, the Department of Justice relaxed the evidentiary requirements for deceased uranium mill workers"as compared to those for living claimants. A.R. at 9. He then cited the regulatory requirements for written medical documentation for both living and deceased claimants. A.R. at 9-10. Those regulations show that the evidentiary burden is higher for living claimants. A.R. at 10. "The different regulatory standards applied to living and deceased millers may reflect a recognition on the part of the Department of Justice that surviving beneficiaries face additional difficulties in locating documentary evidence." *Id.* The Appeals Officer noted that

9

Plaintiff provided no legal authority to further relax the evidentiary requirements. *Id.*

DOJ provided a reasoned explanation for its action which is supported by the facts in the administrative record. The Court concludes, therefore, that DOJ's denial of Plaintiff's claim was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law with respect to due process.

**Equal Protection and Consultation with Surgeon General**

Plaintiff argues that DOJ's denial of her claim violates her right to equal protection of the law under the United States Constitution. (Resp. at 24-25). Plaintiff states that RECA regulations §§ 79.55(a) and 79.65(a) permit any diagnosis of "restrictive lung disease" made by a physician employed by the Indian Health Service to be treated as the equivalent of a diagnosis of pulmonary fibrosis but do not permit a similar treatment of the diagnosis when it is made by physicians practicing in other circumstances. (*Id.* at 24). Plaintiff further states that decedent's pulmonary function test interpretation indicates the presence of a mild restrictive defect and contends that this interpretation should be treated as the equivalent of pulmonary fibrosis, a compensable illness. (*Id.* at 24-25). Plaintiff also contends that since decedent "was not Native American, it appears that the benefits conferred by the subject regulations could never be applied to a [sic] Plaintiff." (*Id.* at 25).

Plaintiff also argues that "DOJ should have consulted with the Surgeon General with respect to making determinations as contemplated by § 6(b) of the Act." (Response at 18).

The Court need not address Plaintiff's equal protection and consultation with the Surgeon General arguments because she did not raise them in her appeal to the DOJ Appeals Officer. *See* A.R. at 16-21. "Absent exceptional circumstances, a reviewing court will not consider contentions which were not pressed upon the administrative agency." *Wilson v. Hodel*, 758 F.2d 1369, 1373

(10th Cir. 1985) (*citing Hormel v. Helvering*, 312 U.S. 552, 557 (1940)). "Simple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but erred against objection made at the time appropriate under its practice." *Id.* (*quoting United STates v. L.C. Tucker Truck Lines*, 344 U.S. 33, 37 (1952)).

Even if Plaintiff had raised her equal protection argument before DOJ, DOJ's denial of Plaintiff's claim was not arbitrary, capricious, an abuse of discretion or contrary to law with respect to RECA regulations §§ 79.55(a) and 79.65(a) because those regulations are not applicable to Plaintiff's claim. Sections 79.55(a) and 79.65(a) state "With respect to a deceased claimant, the Program will treat as equivalent to a diagnosis of pulmonary fibrosis any diagnosis of 'restrictive lung disease' made by a physician employed by the Indian Health Service." There is no diagnosis of "restrictive lung disease" in the Administrative Record. Plaintiff points only to an interpretation on a pulmonary function test of "mild restrictive and moderate obstructive ventilatory defect." A.R. at 326. Plaintiff offered no evidence that an interpretation of a restrictive ventilatory defect is the equivalent of a diagnosis of "restrictive lung disease." *See* Stedman's Medical Dictionary 499, 550 (28th ed. 2006) (*compare* defect: an imperfection, malformation, dysfunction, or absence; an attribute of quality, in contrast with deficiency, which is an attribute of quantity, *with* disease: an interruption, cessation, or disorder of a body, system, or organ structure or function). Because there is no diagnosis of "restrictive lung disease," §§ 79.55(a) and 79.65(a) are not applicable to Plaintiff's claim.

With respect to her assertion that the DOJ should have consulted with the Surgeon General, Section 6(b) of RECA states "The Attorney General *may* consult with the Surgeon General with respect to making determinations pursuant to the guidelines." 42 U.S.C. 2210 note (*emphasis*

11

*added*).  Section 6(b) allows DOJ to consult with the Surgeon General, but does not require such consultations.  That DOJ did not consult with the Surgeon General is not an abuse of discretion; nor is it contrary to law.

**IT IS, THEREFORE, ORDERED** that the Department of Justice' decision to deny Plaintiff's claim is **AFFIRMED.**  This case is **DISMISSED with prejudice**.

Dated this 22nd day of March, 2007.

_____
**MARTHA VAZQUEZ**
**CHIEF UNITED STATES DISTRICT JUDGE**

*Attorney for Plaintiff:*

Roberto C. Armijo
Civerolo, Gralow, Hill & Curtis
P.O. Drawer 887
Albuquerque, NM 87103-0887


*Attorneys for Defendant:*

Peter D. Keisler
David C. Iglesias
Jan Mitchell
United States Attorney Office
P.O. Box 607
Albuquerque, NM 87103

Richard G. Lepley
Julia J. Yoo
U.S. Department of Justice
20 Massachusetts Ave., NW, Room 7336
Washington, D.C. 20044